# EXHIBIT E

## PRINCIPAL GUARANTY

THIS PRINCIPAL GUARANTY, dated as of February 24, 2006 (this "Guaranty"), is made by JERRY L. WALLACE (the "Guarantor"), having his principal place of business at 4458 Ocean View Drive, Destin, Florida 32541, for the benefit of SAMSARA INVESTMENT III LLC, a Delaware limited liability company ("SAMSARA"), having its principal place of business c/o Aditi Shah, 1500 Lexington Avenue, Apt. 18C, New York, New York 10029.

### WITNESSETH:

WHEREAS, SAMSARA has invested $6,000,000.00 (the "Investment") in Shores of Paradise, LLC, a Mississippi limited liability company ("Company") in exchange for preferred, non-voting membership interests in the Company pursuant to the terms of that certain Investment Agreement dated February 23, 2006, by and among the Guarantor, Samsara and the Company ("Investment Agreement") and that certain Amended and Restated Operating Agreement of the Company dated February 24, 2006 (the "Agreement"), all capitalized terms used but not otherwise defined herein shall have the meanings specified in the Agreement;

WHEREAS, prior to the Investment, the Guarantor owns 100% of the membership interests in the Company:

WHEREAS, the Guarantor will derive substantial benefits as a result of SAMSARA's investment in the Company, and is executing this Guaranty in consideration of such benefits;

WHEREAS, it is a condition to the making of the Investment that the Guarantor shall have executed and delivered this Guaranty; and

WHEREAS, the Guarantor desires to execute this Guaranty in order to satisfy the condition described in the preceding paragraph.

NOW, THEREFORE, as an inducement to SAMSARA to make the Investment in the Company, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Guarantor and SAMSARA agree as follows:

1. The Guarantor irrevocably, absolutely and unconditionally guarantees to SAMSARA, and its successors and assigns, the full and prompt payment and performance of all of the "Guaranteed Obligations" (as hereafter defined) as and when the same shall be due, whether by lapse of time or otherwise. The Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for all of the Guaranteed Obligations as a primary obligor. The Guarantor understands, agrees and confirms that SAMSARA may enforce this Guaranty up to the full amount of the Guaranteed Obligations against the Guarantor without proceeding against the Company, against any other security for the Guaranteed Obligations, or under any other guaranty covering all or a portion of the Guaranteed Obligations.

As used herein, the term "Guaranteed Obligations" means the following: (i) the payment of the "Class B Preferred Return" (as defined in the Agreement); (ii) performance of any indemnification obligations of the Company in favor of SAMSARA pursuant to the Investment Agreement; and (iii) the payment of all reasonable out-of-pocket third party costs and expenses paid or incurred by SAMSARA in connection with the enforcement of this Guaranty if Guarantor (or any heirs, legal representatives or assigns of Guarantor) contest in any manner whatsoever the proper exercise by SAMSARA of any of its rights and remedies under the Investment Agreement, the Agreement or hereunder, including, without limitation, with respect to the confession of judgment described in Section 24 hereof or similar document delivered in connection with this Guaranty.

Notwithstanding anything contained in this Guaranty to the contrary and notwithstanding that SAMSARA is not a member of the Company, in the event that (i) SAMSARA timely and properly exercises its option under Section 2.2(c) of the Investment Agreement to require the Company to purchase the DB Biloxi Property and the Ms. Hamill Property from SAMSARA for a purchase price of Ten Million Two Hundred Thousand Dollars and no/100 ($10,200,000.00) and (ii) the Company fails to so purchase such properties as required by Section 2.2(c) of the Investment Agreement, then the term "Guaranteed Obligations" shall mean, instead of the definition listed above, the difference between Ten Million Two Hundred Thousand Dollars and no/100 ($10,200,000.00) and the "Net Sales Amount" (hereafter defined). The term "Net Sales Amount," as used herein, shall mean the aggregate sales price of the DB Biloxi Property and Ms. Hamill Property stated in the respective earnest money contracts selling such properties, minus any customary closing costs, including, without limitation, reasonable attorneys' fees, title company fees, brokerage fees and title policy fees and any other customary costs theretofore incurred by SAMSARA in connection with its ownership of the DB Biloxi Property and Ms. Hamill Property, including, without limitation, property taxes and insurance. SAMSARA shall have the right to sell the DB Biloxi Property and Ms. Hamill Property together or separately and, as long as SAMSARA lists the Property with a licensed real estate broker with commercial experience with the goal of liquidating such property within six (6) months, then the price which SAMSARA sells either of such properties for, to an unaffiliated party in an arms-length transaction, shall be deemed to be reasonable.

2. The liability of the Guarantor hereunder is primary, irrevocable, absolute and unconditional and is exclusive and independent of any security for or other guaranty of the Guaranteed Obligations whether executed by the Guarantor, any other guarantors or by any other party, and the liability of the Guarantor hereunder shall not be affected or impaired by any circumstance or occurrence whatsoever, including, without limitation: (a) any direction as to application of payment by the Company or by any other party, (b) any other continuing or other guaranty, undertaking or maximum liability of the Guarantor, any other guarantor of the Guaranteed Obligations, or of any other party, (c) any payment on or in reduction of any such other guaranty or undertaking, (d) any payment made to SAMSARA on the Guaranteed Obligations which SAMSARA repays the Company pursuant to court order in any bankruptcy, reorganization, arrangement, moratorium or other debtor relief proceeding, and the Guarantor waives any right to the deferral or modification of its obligations hereunder by reason of any such proceeding, or (e) any action or inaction by SAMSARA described in Sections 4, 5 or 12 hereof. This Guaranty may not be revoked by the Guarantor and shall continue to be effective

with respect to any Guaranteed Obligations arising or created after any attempted revocation by the Guarantor. Upon the Guarantor's death, this Guaranty shall be binding upon the Guarantor's estate and the Guarantor's legal representatives and heirs. This is a guaranty of payment and performance and not of collection.

3. The obligations of the Guarantor hereunder are independent of the obligations of any other guarantor of the Guaranteed Obligations and a separate action or actions may be brought and prosecuted against the Guarantor or any such other guarantor whether or not action is brought against any other such guarantor, and whether or not any other such guarantor of the Guaranteed Obligations be joined in any such action or actions. The Guarantor waives, to the fullest extent permitted by law, the benefits of any statute of limitations affecting its liability hereunder or the enforcement thereof.

4. The Guarantor hereby waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives promptness, diligence, presentment, demand of payment, protest, notice of dishonor or nonpayment of any such liabilities, suit or taking of other action by SAMSARA and any other notice to, any party liable thereon (including any other guarantor of the Guaranteed Obligations or the Company).

5. SAMSARA may at any time and from time to time without the consent of, or notice to, the Guarantor, without incurring responsibility to the Guarantor, without impairing or releasing the obligations of the Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

    (a) change the manner, place or terms of payment of, and/or change or extend the time of payment or performance of, renew or alter, any of the Guaranteed Obligations or any security therefor, or any liability incurred directly or indirectly in respect thereof, and the guaranty herein made shall apply to the Guaranteed Obligations as so changed, extended, renewed or altered;

    (b) take and hold security for the payment and performance of the Guaranteed Obligations and sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Guaranteed Obligations or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset against the Guaranteed Obligations;

    (c) exercise or refrain from exercising any rights against the Company or any other guarantor of the Guaranteed Obligations or otherwise act or refrain from acting;

    (d) add, release or substitute any one or more endorsers, other guarantors, the Company or other obligors;

    (e) settle or compromise any of the Guaranteed Obligations, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and subordinate the payment of all or any part thereof to the

payment of any liability (whether due or not) of the Company to creditors of the Company other than SAMSARA;

(f) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of the Company to SAMSARA regardless of what liabilities of the Company remain unpaid;

(g) consent to or waive any breach of, or any act, omission or default under the Agreement or any of the instruments or agreements referred to therein, or otherwise amend, modify or supplement the Agreement or any of such other instruments or agreements;

(h) act or fail to act in any manner referred to in this Guaranty which may deprive the Guarantor of its rights to subrogation against the Company to recover full indemnity for any payments made pursuant to this Guaranty; and/or

(i) take any other action which would, under otherwise applicable principles of common law, give rise to a legal or equitable discharge of the Guarantor from its liabilities under this Guaranty.

6. This Guaranty is a continuing one and all liabilities to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. No failure or delay on the part of SAMSARA in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein expressly specified are cumulative and not exclusive of any rights or remedies which SAMSARA would otherwise have. No notice to or demand on the Guarantor in any case shall entitle the Guarantor to any other further notice or demand in similar or other circumstances or constitute a waiver of the rights of SAMSARA to any other or further action in any circumstances without notice or demand. It is not necessary for SAMSARA to inquire into the capacity or powers of the Company, and any indebtedness or other obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

7. Any indebtedness of the Company now or hereafter held by the Guarantor is hereby subordinated to the indebtedness and other obligations of the Company to SAMSARA, and such indebtedness of the Company to the Guarantor, if SAMSARA so requests, shall be collected, enforced and received by the Guarantor as trustee for SAMSARA and be paid over to SAMSARA on account of the Guaranteed Obligations, but without affecting or impairing in any manner the liability of the Guarantor under the other provisions of this Guaranty. Without limiting the generality of the foregoing, the Guarantor hereby agrees with SAMSARA that he will not exercise any right of subrogation which it may at any time otherwise have as a result of this Guaranty (whether contractual, under Section 509 of the Bankruptcy Code or otherwise) until all of the Guaranteed Obligations have been irrevocably paid in cash and performed in full.

8. In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, SAMSARA must rescind or restore any payment, or any part thereof, received by SAMSARA in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to the Guarantor by SAMSARA shall be without effect, and this Guaranty shall remain in full force and effect with respect to the Guarantor. It is the intention of the Company and the Guarantor that the Guarantor's obligations hereunder shall not be discharged except by the Guarantor's performance of such obligations and then only to the extent of such performance.

9. Notwithstanding anything to the contrary contained in this Guaranty, the Guarantor irrevocably waives and releases and abrogates any and all rights it may have under any agreement, at law or in equity (including, without limitation, any law subrogating the Guarantor to rights of SAMSARA), to assert any claim against or seek contribution, indemnification or other form of reimbursement from the Company or any other party liable for payment or performance of any or all of the Guaranteed Obligations for any payment or performance made by the Guarantor under or in connection with this Guaranty or otherwise.

10. (a) The Guarantor waives any right (except as shall be required by applicable law and cannot be waived) to require SAMSARA to: (i) proceed against any other guarantor of the Guaranteed Obligations or any other party; (ii) proceed against or exhaust any security held from the Company, any other guarantor of the Guaranteed Obligations or any other party or any other collateral held as security for any of the Guaranteed Obligations; (iii) join the Company or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty; or (iv) pursue any other remedy in the power of SAMSARA whatsoever. The Guarantor waives any defense based on or arising out of any defense of the Company, any other guarantor of the Guaranteed Obligations or any other party other than payment in cash and performance in full of the Guaranteed Obligations, including, without limitation, any defense based on or arising out of the disability of the Company, any other guarantor of the Guaranteed Obligations or any other party, or the unenforceability of the Guaranteed Obligations or any part thereof from any cause, or the cessation from any cause of the liability of the Company other than payment and performance in full of the Guaranteed Obligations. SAMSARA may, at its election, foreclose on any security held by SAMSARA by one or more judicial or nonjudicial sales, or exercise any other right or remedy SAMSARA may have against the Company or any other party, or any security, without affecting or impairing in any way the liability of the Guarantor hereunder except to the extent the Guaranteed Obligations have been paid and performed in full. The Guarantor waives any defense arising out of any such election by SAMSARA, even though such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of the Guarantor against the Company or any other party or any security. SAMSARA shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

(b) The Guarantor waives all presentments, demands for performance, protests and notices, including, without limitation, notices of nonperformance, notices of protest, notices of dishonor, notices of acceptance of this Guaranty, and notices of the existence, creation or incurring of new or additional indebtedness. The Guarantor

assumes all responsibility for being and keeping itself informed of the Company's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment or nonperformance of the Guaranteed Obligations and the nature, scope and extent of the risks which the Guarantor assumes and incurs hereunder, and agrees that SAMSARA shall have no duty to advise the Guarantor of information known to it regarding such circumstances or risks.

11.    The Guarantor hereby consents and agrees to each of the following, and agrees that its obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which the Guarantor might otherwise have as a result of or in connection with any of the following:

(a)    any renewal, extension, restatement increase, modification, recasting alteration or rearrangement of all or any part of the Guaranteed Obligations, or any other document, instrument, contract or understanding between the Company and SAMSARA, or any other parties, pertaining to the Guaranteed Obligations or any failure of SAMSARA to notify the Guarantor of any such action;

(b)    any adjustment, indulgence, forbearance or compromise that might be granted or given by SAMSARA to the Company or the Guarantor (or any other guarantor of the Guaranteed Obligations);

(c)    the insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of the Company, the Guarantor (or any other guarantor of the Guaranteed Obligations) or any other party at any time liable for the payment or performance of all or part of the Guaranteed Obligations; or any dissolution of the Company or the Guarantor (or any other guarantor of the Guaranteed Obligations), or any sale, lease or transfer of any or all of the assets of the Company or the Guarantor (or any other guarantor of the Guaranteed Obligations); or any changes in the shareholders, partners or members of the Company or the Guarantor (or any other guarantor of the Guaranteed Obligations);

(d)    the invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including without limitation the fact that (i) the Guaranteed Obligations, or any part thereof, exceed the amount permitted by law, (ii) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (iii) the officers or representatives executing the Agreement or otherwise creating the Guaranteed Obligations acted in excess of their authority, (iv) the Guaranteed Obligations violate applicable usury laws, (v) the Company has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from the Company, (vi) the creation, performance or payment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the

Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (vii) the Agreement has been forged or otherwise are irregular or not genuine or authentic, it being agreed that the Guarantor shall remain liable hereon regardless of whether the Company or any other person be found not liable on the Guaranteed Obligations or any part thereof for any reason;

(e) any full or partial release of the liability of the Company for the Guaranteed Obligations (other than as a result of the indefeasible payment in full of the Guaranteed Obligations), or any part thereof, or of any co-guarantors, or any other person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by the Guarantor that the Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of any other party, and the Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other parties will be liable to pay the Guaranteed Obligations, or that SAMSARA will look to other parties to pay the Guaranteed Obligations;

(f) the taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations;

(g) any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including, without limitation, negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment and performance of all or any part of the Guaranteed Obligations;

(h) the failure of SAMSARA or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handing or treatment of all or any part of any collateral, property or security, including but not limited to, any neglect, delay, omission, failure or refusal of SAMSARA (i) to take or prosecute any action relating to the creation or collection of the funds necessary to pay the Guaranteed Obligations or (ii) to take or prosecute any action in connection with any instrument or agreement creating, evidencing or securing all or any part of the Guaranteed Obligations;

(i) the reorganization, merger or consolidation of the Company into or with any other person;

(j) any payment by the Company to SAMSARA is held to constitute a preference under bankruptcy laws, or for any reason SAMSARA is required to refund such payment or pay such amount to the Company or someone else; or

(k) any other action taken or omitted to be taken with respect to the Agreement, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices the Guarantor or increases the likelihood that

the Guarantor will be required to pay and perform the Guaranteed Obligations pursuant to the terms hereof, it being the unambiguous and unequivocal intention of the Guarantor that the Guarantor shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particular described herein, which obligation shall be deemed satisfied only upon the full and final payment, performance and satisfaction of the Guaranteed Obligations.

12.    In order to induce SAMSARA to make the Investment in the Company, the Guarantor represents, warrants and covenants that:

(a)    the Guarantor has duly executed and delivered this Guaranty and this Guaranty constitutes the legal, valid and binding obligation of the Guarantor enforceable in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies;

(b)    neither the execution, delivery or performance by the Guarantor of this Guaranty, nor compliance by the Guarantor with the terms and provisions hereof and thereof, will (i) contravene any provision of any applicable law, statute, rule or regulation or any applicable order, writ, injunction or decree of any court or governmental instrumentality, or (ii) conflict with or result in any breach of any of the terms, covenants, conditions or provisions of, or constitute a default under, or result in the creation or imposition of (or the obligation to create or impose) any lien upon any of the property or assets of the Guarantor pursuant to the terms of any indenture, mortgage, deed of trust, loan agreement, credit agreement, or any other material agreement, contract or instrument to which the Guarantor is a party or by which it or any of its property or assets is bound or to which it may be subject;

(c)    no order, consent, approval, license, authorization or validation of, or filing, recording or registration with (except as have been obtained or made), or exemption by, any governmental or public body or authority, or any subdivision thereof, is required to authorize, or is required for, (i) the execution, delivery and performance of this Guaranty by the Guarantor or (ii) the legality, validity, binding effect or enforceability of this Guaranty;

(d)    there are no actions, suits or proceedings pending or, to the knowledge of the Guarantor, threatened (i) with respect to this Guaranty or (ii) with respect to the Guarantor that could reasonably be expected to materially and adversely affect (a) the business, operations, property, assets, liabilities, condition (financial or otherwise) or prospects of any of Guarantor or (b) the rights or remedies of SAMSARA hereunder or the ability of Guarantor to perform his obligations to SAMSARA hereunder have a material adverse effect;

(e) prior to the Investment, all of the membership interests in the Company are owned directly by Guarantor;

(f) the Guarantor (i) is now and at all times during the term hereof shall be generally paying its debts as they mature; (ii) now owns, and at all times during the term of this Guaranty shall own, property which, at a fair valuation, is greater than the sum of its debts; and (iii) now has and at all times during the term of this Guaranty shall have capital sufficient to carry on its business and transactions and all business transactions in which it is about to engage;

(g) the Guarantor has not commenced a voluntary case under the Bankruptcy Code, nor has any involuntary case been commenced against the Guarantor, nor has a custodian been appointed for or taken charge of the Guarantor, nor has the Guarantor commenced any proceedings under any reorganization, arrangement, composition, adjustment of debt, relief of debtors, dissolution, insolvency, or liquidation or dissolution or similar law of any jurisdiction either now or hereafter in effect, nor has the Guarantor been adjudicated insolvent or bankrupt, or had any order of relief or other order approving any such case or proceeding entered against it, nor has the Guarantor made any assignment for the benefit of creditors, made an admission in writing of its inability to pay its debts as they become due, nor has any action been taken by the Guarantor for the purpose of effectuating any of the foregoing;

(h) all representations and warranties made by the Guarantor herein shall survive the execution and delivery of this Guaranty.

13. Anything in this Guaranty to the contrary notwithstanding, the Guarantor hereby agrees to pay all reasonable costs and expenses of SAMSARA in connection with the proper enforcement of this Guaranty and in connection with any waiver or consent relating hereto (including in each case, without limitation, the reasonable fees and disbursements of Haynes and Boone, LLP, and any other counsel selected by SAMSARA).

14. This Guaranty shall be binding upon the Guarantor and his heirs, legal representatives, and assigns, as applicable, and shall inure to the benefit of SAMSARA and its respective successors and assigns; provided that neither the Guarantor nor SAMSARA shall, without the prior written consent of the other, assign any of his rights, powers, duties or obligations hereunder.

15. Neither this Guaranty nor any provision hereof may be changed, waived, discharged or terminated except with the written consent of both the Guarantor and SAMSARA.

16. The Guarantor acknowledges that an executed (or conformed) copy of the Agreement has been made available to him and the Guarantor is familiar with the contents thereof. The Guarantor agrees to the provisions of the Agreement and hereby waives notice of (i) acceptance of this Guaranty, (ii) any amendment, modification, restatement, recasting or extension of the Agreements, (iii) the occurrence of any default by Company under the Agreement, (vi) the transfer or disposition of any member's interest or any part thereof in

Company, by SAMSARA, (viii) protest, proof of non-payment or default by the Company, or (ix) any other action at any time taken or omitted by SAMSARA, and, generally, all demands and notices of every kind in connection with this Guaranty, the Agreement, and any other documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and the obligations hereby guaranteed.

17.   (a) All notices, requests, approvals, consents and other communications required or permitted under this Guaranty shall be in writing and shall be (as elected by the person giving such notice) hand delivered by messenger or overnight courier service, mailed (airmail, if international) by registered or certified mail (postage prepaid), return receipt requested, or sent via facsimile (provided such facsimile is immediately followed by the delivery of an original copy of same via one of the other foregoing delivery methods) addressed to such party at (i) in the case of SAMSARA, as provided in the Agreement, and (ii) in the case of the Guarantor, at the address set forth opposite the Guarantor's signature below or in any case at such other address as any of the persons listed above may hereafter notify the others in writing.

(b)   Each such notice shall be deemed delivered (i) on the date delivered if by hand delivery or overnight courier service, and (ii) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

(c)   By giving to the other parties at least ten (10) days' written notice thereof, the parties hereto and their respective successors and assigns shall have the right from time to time and at any time during the term of this Guaranty to change their respective addresses.

18.   If claim is ever made upon SAMSARA for repayment or recovery of any amount or amounts received in payment or on account of any of the Guaranteed Obligations and SAMSARA repays all or part of said amount by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over SAMSARA or any of its property or (ii) any settlement or compromise of any such claim effected by SAMSARA with any such claimant (including the Company), then and in such event the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the Guarantor, notwithstanding any revocation hereof or other instrument evidencing any liability of the Company, and the Guarantor shall be and remain liable to SAMSARA hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by SAMSARA.

19.   (a) This Guaranty and the rights and obligations of SAMSARA and the Guarantor hereunder shall be governed by, and interpreted in accordance with, the laws of the State of New York. Each of the parties hereto waives irrevocably (i) any claim to assert that the law of any other jurisdiction governs this Guaranty and (ii) the defense of inconvenient forum to the maintenance of any action or proceeding arising out of or relating to this Guaranty.

(b)   Any suit, action or proceeding arising out of or relating to this Guaranty may be instituted in the courts of the State of New York or of the United States for the

Southern District of New York, in each case which are located in the County of New York, and the Guarantor irrevocably waives any objection which he may now or hereafter have to the laying of venue of any such suit, action or proceeding, as provided herein, and the Guarantor (i) is irrevocably submitting to the non-exclusive jurisdiction of any such court in any suit, action or proceeding, (ii) does hereby designate and appoint National Registered Agents, Inc., having an address of 875 Avenue of the Americas, Suite 501, New York, NY 10001, as his authorized agent to accept and acknowledge on his behalf service of any and all process which may be served in any such suit, action or proceeding in the aforementioned courts and (iii) agrees that service of process upon said agent at said address and written notice of said service mailed or delivered to the Guarantor in the manner provided herein, shall be deemed in every respect effective service of process upon the Guarantor, in any such suit, action or proceeding in the State of New York. The Guarantor shall give prompt notice to SAMSARA of any changed address of his authorized agent hereunder, may at any time and from time to time designate a substitute authorized agent with an office in the State of New York (which office shall be designated as their address for service of process) and shall promptly designate such a substitute if his authorized agent ceases to have an office in the State of New York or is dissolved without leaving a successor.

(c)   EACH OF THE GUARANTOR AND SAMSARA (BY ITS ACCEPTANCE OF THE BENEFITS OF THIS GUARANTY) HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTY, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

20.   All obligations of the Guarantor hereunder will be satisfied without setoff, counterclaim or other defense and on the same basis as payments are made by the Company under the Agreement.

21.   Upon payment and performance in full of all of the Guaranteed Obligations, SAMSARA shall take such steps as are reasonably necessary to confirm the termination of this Guaranty.

22.   If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

23.   The Guarantor will, from to time, execute and deliver to SAMSARA all such other instruments and documents and take or cause to be taken all such other further action as SAMSARA may reasonably request in order to effect and confirm all or any of the rights of SAMSARA hereunder. The Guarantor agrees to furnish to SAMSARA, upon request, financial

statements of the Guarantor certified as being true and correct and in form of substance satisfactory to SAMSARA.

24. The Guarantor authorizes any attorney admitted to practice before any court of record in the United States to appear on behalf of the Guarantor in any court in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and to confess judgment against the Guarantor in favor of Samsara in the full amount due with respect to the Guaranteed Obligations all without prior notice or opportunity of the Guarantor for prior hearing. The Guarantor agrees and consents that venue and jurisdiction shall be proper in the Court of any County of the State of New York or of New York, New York or in the United States District Court for the Southern District of New York. The Guarantor waives the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived conferring upon the Guarantor any right or privilege of exemption, homestead rights, stay of execution, or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for and enter judgment against the Guarantor shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto; such authority and power may be exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the holder shall deem necessary, convenient, or proper.

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

4458 Ocean View Drive
Destin, Florida 32541

*/s/ Jerry L Wallace*
JERRY L WALLACE
as the Guarantor

Accepted and Agreed to:

SAMSARA INVESTMENTS III, LLC, a Delaware limited liability company

By:_____
    ADITI SHAH
    Manager

H-HOU_596651_2.DOC                - 13 -

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

4458 Ocean View Drive
Destin, Florida 32541

_____
JERRY L. WALLACE
as the Guarantor

Accepted and Agreed to:

SAMSARA INVESTMENTS III, LLC, a Delaware limited liability company

By: _____
ADITI SHAH
Manager