UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMSARA INVESTMENT III, LLC,

                Plaintiff,

      - against -

JERRY L. WALLACE,

                Defendant.

07 Civ. 9385 (JFK)

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HAYNES and BOONE, LLP
*Attorneys for Plaintiff*
Kenneth J. Rubinstein (KR-1410)
Jonathan D. Pressment (JP-1819)
153 East 53rd Street, Suite 4900
New York, New York 10022
(212) 659-4980

- i -

## Table of Contents

Table of Authorities ................................................................................................ ii

Preliminary Statement .............................................................................................1

Facts Relevant to the Motion ..................................................................................1

Argument .................................................................................................................5

I. APPLICABLE STANDARDS ............................................................................5

II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF
    CONTRACT CLAIM .......................................................................................6

III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANT'S
     COUNTERCLAIMS ......................................................................................10

Conclusion .............................................................................................................14

# Table of Authorities

<u>Federal Cases</u>

*Bank of N.Y. v. Tri Polyta Finance B.V.*
  01 Civ. 9104, 2003 WL 1960587 (S.D.N.Y. Apr. 25, 2003) .......................................... 5, 6

*Clalit Health Services v. Israel Humanitarian Foundation*
  385 F. Supp. 2d 392 (S.D.N.Y. 2005) ............................................................................. 5, 6

*EMI Music Marketing v. Avatar Records, Inc.*
  317 F. Supp. 2d 412 (S.D.N.Y. 2004) ......................................................................... 5, 6, 10

*First N.Y. Bank for Business v. DeMarco*
  130 B.R. 650 (S.D.N.Y. 1991) ......................................................................................... 5, 6

*In re Levingston*
  119 B.R. 935 (Bkrtcy, N.D. Miss. 1990) ........................................................................... 12

*In re Venture Mortgage Fund, L.P.*
  282 F.3d 185 (2d Cir. 2002) ............................................................................................... 9

*Lakhaney v. Anzelone*
  788 F.Supp. 160 (S.D.N.Y. 1992) ....................................................................................... 9

*N. Bloom & Son (Antiques) Ltd. v. Skelly*
  673 F.Supp. 1260 (S.D.N.Y. 1987) ................................................................................... 10

*Orix Financial Svcs., Inc. v. Barnes*
  05 Civ. 9665, 2007 WL 2825881 (S.D.N.Y. Sept. 28, 2007) .......................................... 5, 6

*Phoenixcor, Inc. v. Izzy Pnini*
  03 Civ. 7590, 2005 WL 2063829 (S.D.N.Y. Aug. 26, 2005) ............................................. 5

*Rexnord Holdings, Inc. v. Bidermann*
  21 F.3d 522 (2d Cir. 1994) .................................................................................................. 6

*Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*
  232 F. Supp. 2d 289 (S.D.N.Y. 2002) ............................................................................... 10

*Tevdorachvili v. Chase Manhattan Bank*
  103 F. Supp. 2d 632 (E.D.N.Y. 2000) .............................................................................. 10

*U.S. West Financial Services, Inc. v. Marine Midland Realty Credit Corporation*
  810 F.Supp. 1393 (S.D.N.Y. 1993) .................................................................................... 9

State Cases

*Brent Towing Co., Inc. v. Scott Petroleum Corp.*
735 So.2d 355 (Miss. 1999) ................................................................................................ 12

*Canizaro v. Mobile Communications Corp. of America*
655 So.2d 25 (Miss. 1995) .................................................................................................. 12

*Dunlap Acres, Ltd. v. Intervest Development Corp.*
955 So.2d 345 (Miss. App. 2006) ........................................................................................ 9

*Eastline Corp. v. Marion Apartments, Ltd.*
524 So.2d 582 (Miss. 1988) ............................................................................................... 12

*Sanderson Farms, Inc. v. Gatlin*
848 So.2d 828 (Miss. 2003) ............................................................................................... 12

*Scott Addison Constr., Inc. v. Lauderdale County Sch. Sys.*
789 So.2d 771 (Miss. 2001) ............................................................................................... 12

*Seidel v. 18 E 17th St Owners*
79 N.Y.2d 735, 598 N.E.2d 7, 586 N.Y.S.2d 240 (N.Y. 1992) ............................................ 9

*Tupelo Redevelopment Agency v. Gray Corp., Inc.*
972 So.2d 495 (Miss. 2007) ............................................................................................... 12

Federal Statutes

*Miss. Ann. Code. § 75-17-1(5)* ................................................................................................ 9

State Statutes

*New York CPLR § 5001(a)* .................................................................................................... 10

Plaintiff Samsara Investment III, LLC ("Samsara" or "plaintiff"), by its attorneys, Haynes and Boone LLP, submits this memorandum in support of its motion for summary judgment.

## Preliminary Statement

Plaintiff commenced this action seeking redress for defendant's breach of a personal guaranty which related to Samsara's investment in a real estate development organized and managed by defendant.

In February 2006, Samsara invested $6,000,000 in Shores of Paradise, LLC, the proceeds of which were to be used for the purchase of two parcels of real property in Biloxi, Mississippi.

Pursuant to the Operating Agreement executed in connection with the investment, Samsara was promised a return on its investment of $10,200,000 if payment was made within one year, or $14,025,000 (inclusive of agreed-upon interest) if payment was made 18 months from the date of investment. In connection with the investment, defendant executed a personal guaranty under which he agreed to be personally liable for payment of any amount due Samsara.

Based on the evidence adduced during discovery, there is no dispute that $14,025,000 (plus interest) is presently due and owing Samsara, and that defendant is personally liable for such payment. Indeed, defendant has conceded his liability and has testified that the payment due has not been made because he lacks sufficient funds. Defendant's purported financial struggles, however, are no defense to his breach of the guaranty.

## Facts Relevant to the Motion

The facts referred to herein are derived from Plaintiff's Statement of Undisputed Material Facts ("Pltf. 56.1 Stmt."), submitted herewith, and the exhibits referenced therein.

The Parties and the Relevant Agreements

Samsara is a limited liability company organized under the laws of the State of Delaware. (Pltf. 56.1 Stmt., ¶ 1)

Defendant Jerry L. Wallace ("Wallace") is an individual residing in the State of Florida. (Pltf. 56.1 Stmt., ¶ 2)

On or about February 23, 2006, Samsara, Wallace, and Shores of Paradise, LLC ("Shores"), entered into an Investment Agreement. (Pltf. 56.1 Stmt., ¶ 3) Pursuant to the Investment Agreement, Samsara agreed to invest $6,000,000 in Shores (the "Investment Amount"), the proceeds of which were to be used to purchase two parcels of real property in Biloxi, Mississippi. (Pltf. 56.1 Stmt., ¶ 4)

On or about February 24, 2006, the parties executed an Amended and Restated Operating Agreement for Shores. (Pltf. 56.1 Stmt., ¶ 5) In accordance with the terms of the Operating Agreement, Samsara made a capital contribution of $6,000,000. In connection therewith, Samsara received 100% of the Class B shares of Shores. (Pltf. 56.1 Stmt., ¶ 6)

The Operating Agreement provided that Wallace would serve as Shores' Managing Member. (Pltf. 56.1 Stmt., ¶ 7) The Operating Agreement also provided that Wallace, as Managing Member, would cause Shores to make distributions to Samsara by February 26, 2007 equal to a 170% return on the Investment Amount (*i.e.*, a return of $10,200,000) (the "Class B Preferred Return"). (Pltf. 56.1 Stmt., ¶ 8)

In the event the Class B Preferred Return was not made by February 26, 2007, the Operating Agreement provided that Samsara would be entitled to interest accruing from February 26, 2007 through the earlier of: (i) the date of repayment in full; (ii) August 27, 2007;

or (iii) the sale of the Shores' property pursuant to Section 5.7 of the Operating Agreement. (Pltf. 56.1 Stmt., ¶ 9)

In connection with Samsara's investment, on or about February 24, 2006, Wallace executed a personal guaranty (the "Guaranty"), under which, among other things, he agreed to be liable for the payment of the Class B Preferred Return, pursuant to the terms of the Operating Agreement. (Pltf. 56.1 Stmt., ¶ 10)

Prior to signing the Operating Agreement, Investment Agreement and the Guaranty, Wallace: (i) sought and obtained the advice of legal counsel; and (ii) understood the meaning and the terms of each of the agreements. (Pltf. 56.1 Stmt., ¶ 11)

Defendant's Breach of the Guaranty

Shores failed to pay Samsara any portion of the Class B Preferred Return on or before February 26, 2007. Consequently, pursuant to Section 4.1 of the Operating Agreement, the Class B Preferred Return (plus interest at the agreed-upon rate) became due no later than August 27, 2007. (Pltf. 56.1 Stmt., ¶ 12) The parties subsequently agreed that Wallace would, nonetheless, continue as Managing Member of Shores (a position he continues to maintain). (Pltf. 56.1 Stmt., ¶ 13)

Shores failed to make payment of $14,025,000 -- representing the Class B Preferred Return plus interest at the agreed-upon rate -- that was due Samsara on August 27, 2007 and, to date, has failed to make payment to Samsara of any portion of the amount due. (Pltf. 56.1 Stmt., ¶ 14) Pursuant to the Guaranty, Wallace is personally liable for the $14,025,000 due Samsara. (Pltf. 56.1 Stmt., ¶ 15)

Wallace has conceded that $14,025,000 is due and owing Samsara and that he is personally liable for the payment of such amount to Samsara. (Pltf. 56.1 Stmt., ¶ 16)

<u>Defendant's Counterclaims</u>

This action was commenced on or about October 19, 2007. The complaint asserts a single claim for relief arising from Wallace's breach of the Guaranty. (Pltf. 56.1 Stmt., ¶ 17)

Wallace filed an answer on or about December 21, 2007. (Pltf. 56.1 Stmt., ¶ 18) In the answer, Wallace asserted several affirmative defenses as well as four counterclaims. (Pltf. 56.1 Stmt., ¶ 18) The counterclaims are based on the allegation that Samsara became the Managing Member of Shores in February 2007, and, in violation of a Mississippi statute, subsequently failed to fulfill the duties of this position. (Pltf. 56.1 Stmt., ¶ 19)

The Operating Agreement provided that Samsara could become the Managing Member of Shores in the event that Wallace failed to make payment of the Class B Preferred Return by the February 26, 2007 deadline. (Pltf. 56.1 Stmt., ¶ 20)

Wallace has failed to identify any damages he has allegedly suffered as a result of any act or omission of Samsara. (Pltf. 56.1 Stmt., ¶ 21)

Against this backdrop, Samsara moves for summary judgment.

17516_5.DOC

## **Argument**

### I

### **APPLICABLE STANDARDS**

On a motion brought pursuant to Rule 56(c), F.R.C.P., judgment "shall be rendered forthwith if there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Clalit Health Services v. Israel Humanitarian Foundation*, 385 F. Supp. 2d 392, 397 (S.D.N.Y. 2005). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Id.*

Summary judgment is routinely granted to enforce the terms of a guaranty where, as here, plaintiff offers proof of a breach by defendant. *EMI Music Marketing v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 421 (S.D.N.Y. 2004) (granting summary judgment on claims against company executive for breach of contract and personal guaranty and concluding that, "New York courts consistently enforce unconditional guarantees"); *Bank of N.Y. v. Tri Polyta Finance B.V.*, 01 Civ. 9104, 2003 WL 1960587, * 4 (S.D.N.Y. Apr. 25, 2003) (granting summary judgment on breach of personal guarantee); *First N.Y. Bank for Business v. DeMarco*, 130 B.R. 650, 653-654 (S.D.N.Y. 1991) (granting summary judgment on breach of guaranty with respect to financing agreements); *Orix Financial Svcs., Inc. v. Barnes*, 05 Civ. 9665, 2007 WL 2825881, at *9-10 (S.D.N.Y. Sept. 28, 2007) (granting summary judgment on breach of personal guarantees with respect to promissory notes); *Phoenixcor, Inc. v. Izzy Pnini*, 03 Civ. 7590, 2005 WL 2063829, *2-3 (S.D.N.Y. Aug. 26, 2005) (plaintiff entitled to summary judgment and to recover damages

on breach of contract claim, where defendant defaulted on individual guaranty by failing to pay obligation of amounts due and owing pursuant to loan and guaranty agreements); *Clalit Health Services v. Israel Humanitarian Foundation*, 385 F. Supp. 2d at 397.

## II

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM

To prevail on a claim for breach of contract under New York law, a plaintiff must prove: "(1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

Under New York law, it is well-established that, a personal guaranty will be enforced where, as here, "it is unconditional and written in clear and unambiguous terms." *EMI Music Marketing v. Avatar Records, Inc.*, 317 F. Supp. 2d at 421 ("New York courts consistently enforce unconditional guarantees"); *see, e.g., Bank of N.Y. v. Tri Polyta Finance B.V.*, 2003 WL 1960587, at * 4 (plaintiff entitled to summary judgment and defendants barred from asserting affirmative defenses on breach of contract claim where guarantee was absolute and unconditional); *First N.Y. Bank for Business v. DeMarco*, 130 B.R. at 653-654 (granting summary judgment on issue of liability in favor of plaintiff, where defendants failed to make payments of all obligations owed by borrower company under financing agreement and had executed "personal written unlimited guarantees whereby defendants absolutely and unconditionally guaranteed to [plaintiff] payment in full of all of the [borrower company's] liabilities"); *Orix Financial Svcs., Inc. v. Barnes*, 2007 WL 2825881, at *9-10 (summary judgment appropriate and defendant liable on guaranty, where plaintiff met burden of showing

that promissory notes were properly executed and that defendant, as personal guarantor, failed to pay).

There is no dispute that: (i) Samsara made the $6,000,000 capital contribution to Shores; (ii) Shores failed to make payment of the Guaranteed Class B Return due Samsara under the Operating Agreement; and (iii) defendant failed to satisfy his personal obligation to make payment of the Guaranteed Class B Return to Samsara. Defendant readily admitted as much:

> Q.: Mr. Wallace, was it your understanding as of this date, May 2007, that in connection with this transaction, Samsara had made an initial investment of $6 million, which, pursuant to the Operating and Investment Agreements and the Guaranty, they were to get a return of 10.2 million [on] by February 26, 2007?
>
> A.: Yes.
>
> Q.: That was your understanding as to the agreement?
>
> A.: Yes.
>
> \*       \*       \*
>
> Q.: [Samsara] made that investment of $6 million; correct?
>
> A.: Yes.
>
> Q.: And it is your understanding, and you would agree with me, that pursuant to the terms of your agreement with Samsara, Samsara is entitled to a return of $10.2 million on that initial investment plus interest; correct?
>
> A.: Yes.
>
> Q.: And Samsara hasn't been paid a dime towards that $10.2 million plus interest that they're owed; correct?
>
> A.: That's correct.

17516_5.DOC

> Q.: And you do not contest the fact that Samsara is owed that money; correct?
>
> A.: No.
>
> Q.: The only thing you contend is that you may not have the funds to be able to pay them back; correct?
>
> A.: That's a fact.
>
> Q.: But that's the only thing. You don't contest the fact that Samsara is owed that money; correct?
>
> A.: I don't contest that they're owed the money.

(Wallace Tr., Ex. F to Pltf. 56.1 Stmt, pp. 281:23-283:18)

There is also no dispute that defendant was aware of his obligations:

> Q.: Mr. Wallace, we spoke a few moments ago about the closing on the Samsara transaction, that is, the signing of the Guaranty, the Investment Agreement and the Amended Operating Agreement for Shores of Paradise, LLC.
>
> You testified that at the time your counsel from Greenberg Traurig had reviewed it and indicated it was okay for you to sign; correct?
>
> A.: Yes.
>
> Q.: You received that counseling prior to signing; correct?
>
> A.: Not during the signing and not on the day that I signed.
>
> Q.: Prior to signing it?
>
> A.: Prior to the signing.

(Wallace Tr., Ex. F to Pltf. 56.1 Stmt, pp. 210:2-18)

*    *    *

> Q.: So to your knowledge, the [Guaranty] that you signed was the [Guaranty] that was forwarded to you by [your] counsel, correct?

-8-

      A.:      Correct.

      Q.:      And you signed that willingly; correct?

      A.:      Yes.

      Q.:      And agreed to be bound by its provisions; correct?

      A.:      Yes.

(Wallace Tr., Ex. F to Pltf. 56.1 Stmt, pp. 225:25-226:10)

Under New York law, "[t]he basic principle of recovery for breach of contract is that the injured party should be placed in the same position it would have been in had the contract been performed." *U.S. West Financial Services, Inc. v. Marine Midland Realty Credit Corporation*, 810 F.Supp. 1393, 1397 (S.D.N.Y. 1993). This principle is modified by the "fundamental proposition of contract law . . . that the loss caused by a breach is determined as of the time of breach." *Id.*

Here, defendant is personally liable to Samsara in the amount of $14,025,000, broken down as follows: (i) $10,200,000, representing a 170% return on Samsara's $6,000,000 investment, (ii) $3,825,000, representing interest of 75% per annum on the Class B Preferred Return ($10,200,000) from February 26, 2007 through August 27, 2007.[1]

---

[1] The parties were free to negotiate the rate of interest on the Class B Preferred Return pursuant to Section 4.1 of the Operating Agreement. Mississippi law, which governs the Operating Agreement, provides that parties "may contract for and agree to pay . . . any finance charge agreed to in writing by the parties" as long as the principal balance is greater than $2,000. *See* Miss. Ann. Code. § 75-17-1(5). *See, e.g., Dunlap Acres, Ltd. v. Intervest Development Corp.*, 955 So.2d 345, 349-350 (Miss. App. 2006) ("Certainly, contracting parties may place [interest] rates [other than the default statutory rates] in effect in their transaction. But to do so, the rate has to be specified."). Even were New York law to apply, the parties would have been free to agree to interest rates in excess of prevailing rates as the transaction constituted an investment in excess of $2.5 million, and the guarantee was of a corporate obligation. *See, e.g., Seidel v. 18 E 17th St Owners*, 79 N.Y.2d 735, 598 N.E.2d 7, 586 N.Y.S.2d 240 (N.Y. 1992) ("If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be."); *In re Venture Mortgage Fund, L.P.*, 282 F.3d 185, 189-190 (2d Cir. 2002) (transactions over $2.5 million not subject to usury laws); and *Lakhaney v. Anzelone*, 788 F.Supp. 160, 164 (S.D.N.Y. 1992) (defense of usury was not available to guarantors of corporate loan).

Furthermore, where the alleged breach of contract "consists only of a failure to pay money, remedy for the breach is limited to the principal owed plus damages in the form of interest at the prevailing legal rate." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 641 (E.D.N.Y. 2000). New York CPLR § 5001(a) provides that: "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract." CPLR § 5004 provides that: "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." *See, e.g., N. Bloom & Son (Antiques) Ltd. v. Skelly*, 673 F.Supp. 1260, 1269 (S.D.N.Y. 1987) (in a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability).

Prejudgment interest is awarded under New York law as a matter of right for contract damages. *See, e.g., Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 292 (S.D.N.Y. 2002) (awarding prejudgment interest at a rate of nine percent per year from date of breach); *N. Bloom & Son (Antiques) Ltd. v. Skelly*, 673 F.Supp. at 1269 (awarding plaintiff prejudgment interest on its breach of contract claim at a rate of nine percent per year pursuant to CPLR 5001, 5004); *EMI Music Marketing v. Avatar Records, Inc.*, 364 F. Supp. 2d at 345 (same).

Accordingly, Samsara is entitled to a payment of the full amount due by defendant under the Guaranty -- $14,025,000, plus interest at the rate of 9% per annum from August 27, 2007.

### III

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANT'S COUNTERCLAIMS

Defendant asserted four counterclaims alleging that Samsara ignored an obligation to become Managing Member of Shores following Shores' failure to make payment of the Class B Preferred Return by February 26, 2007. (Pltf. 56.1 Stmt., ¶ 10)

Section 5.1 of the Operating Agreement states, in pertinent part:

> The Managing Member shall be [defendant] or his designee; <u>provided</u> <u>however</u>, that if (a) the Company has not paid to [Samsara] the full amount of the Class B Preferred Return on or before February 26, 2007, and (b) the Company owns the DB Biloxi Property and the Ms. Hamill Property (as such terms are defined in the Investment Agreement) as of such date, then [Samsara] becomes the sole Managing Member . . . .

(Pltf. 56.1 Stmt., Ex. D, ¶ 5.1)

Defendant's counterclaims disregard the parties' agreement to revise Section 5.1 of the Operating Agreement to permit defendant to retain the position of Managing Member after February 26, 2007:

> Q.: As of the date you remember Exhibit 25, February 27 [2007], Samsara's return on its investment was already due; correct?
>
> A.: Yes.
>
> Q.: And at that time you continued on as Managing Member of Shores of Paradise?
>
> A.: Yes.
>
>      *         *         *
>
> Q.: And you spoke to Samsara about that?
>
> A.: Yes.
>
> Q.: That was the understanding you had as of February 27, 2007?
>
> A.: Correct.
>
> Q.: And the understanding as of that date was that you would stay on as Managing Member [of Shores]; correct?
>
> A.: Yes.

(Wallace Tr., Ex. F to Pltf. 56.1 Stmt, pp. 274:12-18; 275:11-17)

-11-

17516_5.DOC

Mississippi law, which governs the Operating Agreement, clearly permits parties to modify contractual provisions through words or conduct. *See, e.g., Sanderson Farms, Inc. v. Gatlin*, 848 So.2d 828, 837 (Miss. 2003) ("it is simple contract law that a party may waive the protections of any provision of a contract[, and a] party to a contract may by words or conduct waive a right to which he would otherwise have been entitled" (*quoting Scott Addison Constr., Inc. v. Lauderdale County Sch. Sys.*, 789 So.2d 771, 775 (Miss. 2001)); *Brent Towing Co., Inc. v. Scott Petroleum Corp.*, 735 So.2d 355, 359 (Miss. 1999) ("A waiver may be inferred from the actions and conduct of the parties.")

Indeed, "even where [a] contract provides that [any] modification must be in writing," a written contract may be orally modified where the parties have waived this requirement through a "pattern of conduct" or "course of dealing which repeatedly disregards such stipulation." *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582, 584 (Miss. 1988); *see also, Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So.2d 495, 506-507 (Miss. 2007) (just as "this Court has long held that a party to a contract may by words or conduct waive a right to which he would have otherwise been entitled," he may also waive a written clause that requires all changes in writing); *Canizaro v. Mobile Communications Corp. of America*, 655 So.2d 25, 29-30 (Miss. 1995) (conduct of party could amount to a waiver of right under the contract, even where contract contained provision requiring modification or waiver in writing as "the writing requirement could itself be waived by the subsequent conduct of the parties"; and holding that the Statute of Frauds does not operate to prevent a party from unilaterally waiving his rights under a contract); *In re Levingston*, 119 B.R. 935, 943 (Bkrtcy, N.D. Miss. 1990) ("An oral modification may be made even where the contract provides that modification must be in writing" therefore chancellor erred in holding that the written contract could not be orally

modified (*citing City of Mound Bayou v. Roy Collins Constr.*, 499 So.2d 1354 (Miss. 1986); and based on "the parties' pattern of conduct" the stipulation that all modifications be in writing was waived).

Here, by virtue of his agreement with Samsara, defendant continues to act as Managing Member of Shores:

> Q.: You're still acting, to the extent you can, as Managing Member of Shores of Paradise; correct?
>
> A.: Yes. A-ha.

(Wallce Tr., Ex. F to Pltf. 56.1 Stmt, p. 162:15-18)

Therefore, defendant cannot credibly contend that Samsara assumed the role of Managing Member of Shores, much less failed to satisfy any such duties, when, by his own admission, defendant agreed to stay on in that position, and continues to serve Shores in that capacity today. Moreover, defendant has failed to identify any damages he has suffered by virtue of any act or omission by Samsara.

Accordingly, plaintiff is entitled to summary judgment on defendant's counterclaims.

## Conclusion

Based on the foregoing, plaintiff's motion for summary judgment should be granted in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated: June 30, 2008

                                      HAYNES and BOONE, LLP
                                      *Attorneys for Plaintiff*

By: _____
       Kenneth J. Rubinstein (KR-1410)
       Jonathan D. Pressment (JP-1819)
       153 East 53rd Street, Suite 4900
       New York, New York 10022
       (212) 659-7300