# EXHIBIT G

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SAMASARA INVESTMENT III, LLC,       :

                Plaintiff,          :
                                          07-cv-9385 (JFK)
        -against-                   :
                                          MEMORANDUM OPINION
JERRY L. WALLACE                    :        & ORDER

                Defendant.          :
------------------------------------x
```

**JOHN F. KEENAN, United States District Judge:**

Plaintiff Samsara Investment III, LLC ("Samsara") moves for summary judgment on its claim that defendant Jerry Wallace ("Wallace") has breached a personal guaranty executed in connection with a joint real estate venture. Samsara also seeks summary judgment on Wallace's counterclaims. Wallace has not opposed the motion. For the reasons stated below, the motion is granted in part.

## BACKGROUND

Samsara is a limited liability company organized under Delaware law. Wallace is a resident of Florida who, during the time period relevant to this dispute, served as president and managing member of a company called Shores of Paradise, LLC ("Shores").

On February 23, 2006, Samsara, Wallace and Shores entered into an investment agreement. (Pltf.'s Rule 56.1 Stmt.,

Exh. C). Samsara pledged to invest $6 million in Shores. This investment was to be used to purchase two parcels of real property in Biloxi, Mississippi.

The next day, Samsara and Wallace executed an amended and restated operating agreement for Shores (the "Operating Agreement"). (Pltf.'s Rule 56.1 Stmt., Exh. C.) Pursuant to this agreement, which is governed by Mississippi law, Samsara made the $6 million investment in Shores and received 100% of its Class B shares. Section 4.1 of the Operating Agreement obligated Shores to pay Samsara a 170% preferred return on its investment, equaling $10.2 million, by February 26, 2007. If Shores failed to pay the preferred return by that date, interest would accrue at an annual rate of 75% until full payment was made, the land was sold pursuant to the agreement, or August 27, 2007, whichever was earliest. (Id. § 4.1)

Essentially, in exchange for its $6 million investment, Samsara would receive $10.2 million if payment was made in twelve months, or $14.025 million if payment was made in eighteen months and before the sale of the property.

Section 5.1 of the Operating Agreement designated Wallace as the managing member of Shores, but provided that Samsara would become the managing member on February 26, 2007 if

the preferred return was not paid by that date. (Id. § 5.1). The agreement also contained provisions prohibiting waivers and requiring that modifications be in writing. (Id. §§ 9.1, 9.8).

On the same day that the parties signed the Operating Agreement, Wallace executed a guaranty (the "Guaranty") in which he unconditionally agreed to be held personally liable for all of Shores' obligations under the Operating Agreement, including the payment of preferred return plus the specified default interest. (Pltf.'s Rule 56.1 Stmt., Exh. E. § 1). The Guaranty is governed by New York law. (Id. § 19).

On October 19, 2007, Samsara commenced this action against Wallace seeking to enforce his guarantee of Shores' payment obligations. In its complaint, Samsara alleges that it was never paid, that "Shores was required to make payment of $12,450,000 million to Samsara by August 27, 2007" pursuant to the Operating Agreement, and that Wallace is liable for this amount as guarantor. (Compl. ¶¶ 9-10). In his answer, Wallace denies liability and raises counterclaims alleging that Samsara breached its obligation to take over as Shores' managing member on February 26, 2007 upon the nonpayment of the preferred return, as provided for in section 5.1 of the Operating Agreement.

At a deposition on May 12, 2008, Wallace testified that he signed the Operating Agreement and Guaranty after reviewing them with an attorney; that he understood Samsara was entitled by those agreements to received a return on its investment of $10.2 million plus interest; that none of this amount has been paid to date; that he does not contest the fact that Samsara is owed the money; and that his only contention is that he does not have the funds to pay Samsara. (Pltf.'s Rule 56.1 Stmt., Exh. F. pp. 210, 225-26, 281-83).

Wallace also testified, at first, that he had "no choice" but to stay on as Shores' managing member after it defaulted on the preferred return because Samsara did not "take [it] over and handle it," as provided for in the Operating Agreement. (<u>Id.</u> at 162-64). Later on in the deposition, however, he stated that he exchanged correspondence with Samsara around the time of the default, reached an agreement that he would continue on as managing member at least until July 30, 2007, and that he never asked Samsara to take over during that period. (<u>Id.</u> at 274-280). He also stated that he continues to act as managing member at the present time to the extent that he can, although there is presently no activity at the company. (<u>Id.</u> 162-63).

On June 30, 2008, Samsara filed the instant summary judgment motion. Samsara seeks damages of $14.025 million, in

-4-

addition to pre- and post-judgment interest. The $14.025 million reflects the 170% return that became due on February 26, 2007 ($10.2 million), plus the agreed-upon 75% default interest accruing through August 27, 2007. The total amount differs from the $12.45 million demanded in the complaint.

Pursuant to a briefing schedule set at a pre-motion conference, the deadline for Wallace's response was August 8, 2008. Wallace has not submitted any opposition to the motion.

## DISCUSSION

The Court may grant summary judgment only where the moving papers and affidavits submitted by the parties establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Brown v. City of Oneonta, 106 F.3d 1125, 1130 (2d Cir. 1997).

### A. Plaintiff's Breach of Contract Claim

New York's substantive law governs the Guaranty. Under New York Law, a plaintiff must show three elements in order to establish a prima facie case that it is entitled to collect on a guarantee: (1) plaintiff is owed a debt by a third party; (2) defendant guaranteed payment of the debt; and (3) neither the third party nor the defendant has paid the debt. Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994).

Samsara has established that Wallace has breached his obligations under the Guaranty and that no issue of material fact exists as to his liability. The signed contracts and Wallace's deposition testimony, described above, establish that Shores owes plaintiff a 170% preferred return on its investment plus default interest; that defendant unconditionally guaranteed this obligation, and that this amount was never paid to plaintiff.

It should be noted—although Wallace has not interposed a usury defense-that neither the 170% return nor the 75% default interest rate appear to run afoul of any applicable usury laws. The parties were free to agree to these exorbitant rates under Mississippi law, which governs the Operating Agreement, because they were specified in writing and the amount of the investment exceeded $2,000. See Miss Ann. Code § 75-17-1(5) (stating that the parties "may contract for and receive any finance charge agreed to in writing" if "the principal balance to be repaid originally exceeds Two Thousand Dollars"); Dunlap Acres, Ltd. v. Intervest Dev. Corp., 955 So.2d 345, 349-50 (Miss. App. 2006) (noting that § 75-17-1(5) seems to permit the parties to agree to "interest [that] is to be paid at some figure which could be astronomical"). New York usury laws would not void the Guaranty because, even assuming the transaction was in fact a loan disguised as an investment, see Seidel v. 18 East 17th Street

Owners, Inc., 79 N.Y.2d 735, 744 (N.Y. 1992), the amount exceeded $2.5 million, and the guarantee was of a corporate obligation. See In re Venture Mortgage Fund, L.P., 282 F.3d 185, 189-190 (2d Cir. 2002) (stating that New York usury laws do not apply to loans in excess of $2.5 million, pursuant to N.Y. Gen. Oblig. Law § 5-501(6)(b)); Lakhaney v. Anzelone, 788 F. Supp. 160, 64 (S.D.N.Y. 1992) (noting that, under N.Y. Gen. Oblig. Law § 5-521 and case law applying it, the defense of usury is not available to corporations nor to guarantors of corporate obligations).

Plaintiff has failed to show, however, the absence of a triable issue with respect to damages. It is undisputed that $10.2 million became due on February 26, 2007, and that nothing was paid prior to August 27, 2007. But Samsara seeks default interest accruing through the entire interim period. Under the Operating Agreement, default interest would only accrue through August 27, 2007 if the land had not been sold before that date. Samsara's complaint and moving papers are silent on whether a sale took place. The lack of clarity is not helped by the fact that the complaint and the moving papers assert that different amounts became due on August 27, 2007.

### B. Defendant's Counterclaims

Defendant alleges that Samsara breached the Operating Agreement and the fiduciary duties that a manager of a limited

-7-

liability company owes under Mississippi law. See Miss Ann. Code § 79-29-402(1). The basis of these counterclaims is Samsara's alleged failure to take over as managing member in February 2007 when Shores defaulted on the preferred return, as provided for by section 5.1 of the Operating Agreement.

In his deposition testimony, Wallace admitted that he reached an agreement with Samsara that he would remain as managing member following February 2007. He has continued in this capacity without protest since then. This waived section 5.1's requirement that Samsara take over as managing member. "[I]t is simple contract law that a party may waive the protections of any provision of a contract," either "by words or conduct." Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 837 (Miss. 2003). Although the Operating Agreement prohibited waivers and required modifications to be in writing, these provisions were themselves waived by the parties' consistent course of conduct in allowing Wallace to continue as managing member. See Exxon Corp. v. Crosby-Mississippi Resources, Ltd., 40 F.3d 1474, 1492 (5th Cir. 1995) (anti-waiver clause may be waived under Mississippi law by parties' course of performance); Canizaro v. Mobile Communications Corp. of America, 655 So.2d 25, 29 (Miss. 1995) (provision requiring modifications and waivers in writing is itself waivable); Tupelo

-8-

Redevelopment Agency v. Gray Corp., Inc., 972 So. 2d 495, 507 (Miss. 2007) (same).

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment on its breach of contract claim is granted in part. Plaintiff is awarded judgment on the issue of defendant's liability as guarantor of Shores' obligations under the Operating Agreement. Plaintiff may move for summary judgment on the issue of damages by September 4, 2008, and the deadline for defendant's opposition is September 18, 2008. Plaintiff is awarded summary judgment on each of defendant's counterclaims.

SO ORDERED.

Dated:     New York, New York
           August 21, 2008

*John F. Keenan* (signature)

JOHN F. KEENAN
United States District Judge

Case 1:07-cv-09385-JFK-JCF  Document 28  Filed 08/23/2008  Page 9 of 10